## IN THE UNITED STATES DISTRICT COURT FOR THE NORTHERN DISTRICT OF FLORIDA TALLAHASSEE DIVISION

UNITED STATES OF AMERICA

v.                                        CASE NO.  4:13cr102-RH/CAS

ISAAC DILLARD WILSON,

      Defendant.

_____/


## ORDER DENYING THE MOTION TO SUPPRESS


The defendant has moved to suppress evidence that was seized after a drug dog alerted during a traffic stop.  When the dog alerted, the stop had not been unduly prolonged; the officer had proceeded at a reasonable pace and was completing the steps normally involved in issuing a citation.  The wrinkle is this: the officer issued a citation for a turning infraction the defendant did not commit; the officer made a mistake of law that the government concedes was unreasonable. Even so, the officer had probable cause to issue a citation for speeding and would have done so had the officer not incorrectly issued the citation for the nonexistent turning infraction.

So the officer had probable cause to make the stop and to issue a citation. The drug dog was properly deployed and alerted during the time reasonably required to issue a citation and while the officer was in fact issuing a citation.

This order denies the motion to suppress.

# I

Tallahassee Police Department officer Patrick Coney was approaching a red light southbound when the defendant Isaac Dillard Wilson drove through the intersection westbound. Mr. Wilson was speeding. Based on his training and experience, Officer Coney knew Mr. Wilson was speeding. Officer Coney turned right to follow Mr. Wilson, already intending to stop Mr. Wilson.

At the next intersection, Mr. Wilson turned left—southbound—onto a four-lane road. The turn went from the left-turn lane westbound to the outside lane southbound. Officer Coney mistakenly thought that turning left into the outside (right) lane, rather than into the inside (left) lane, was an infraction. Officer Coney stopped Mr. Wilson. Officer Coney intended to issue a citation for the left-turn infraction and not to issue an additional citation for speeding. This was his intention because he believed that one citation would be enough and that the turning infraction was clearer. Except for the mistaken view of the law, this was an altogether reasonable approach.

A canine officer, Michael Martin, was nearby and unoccupied.  He promptly arrived to provide backup.  Officer Coney initiated a routine license and records check, which showed that Mr. Wilson was a convicted felon.  Officer Martin deployed his dog while Officer Coney processed the traffic citation.  Before Officer Coney finished, the dog alerted, providing probable cause to search Mr. Wilson's vehicle.  This all occurred well within the time reasonably required to issue a citation.

At least by the point—early in the traffic stop—when the records check showed a criminal history, Officer Coney had made two decisions: the drug dog would be deployed, and a citation would be issued.

After the dog alerted, officers searched the car.  They seized two firearms and marijuana.  Mr. Wilson has moved to suppress that evidence, along with post-*Miranda* statements he made after he was detained.

## II

An officer may stop a vehicle based on reasonable suspicion or probable cause.  Officer Coney had both reasonable suspicion and probable cause to believe Mr. Wilson was speeding.  *See United States v. Monzon-Gomez*, 244 F. App'x 954, 959 (11th Cir. 2007) ("The Fourth Amendment plainly does not prohibit a law enforcement officer from pulling over a motorist for suspected speeding whenever the officer is acting solely on the basis of his visual observation.").  *See also*

*United States v. Ludwig*, 641 F.3d 1243, 1247-48 (10th Cir. 2011) (holding that an officer's visual observation of a speeding car provided probable cause for a traffic stop; the officer "enjoyed a fine view" and "possessed 15 years' experience as a highway patrolman watching cars and estimating speed"); *United States v. Gaffney*, 789 F.3d 866, 867-70 (8th Cir. 2015) (holding that an officer's visual estimation that a driver was traveling 50 to 55 in a 35 miles-per-hour zone provided reasonable suspicion for a traffic stop under the totality of the circumstances despite the officer's inexperience with speeding violations and inability to estimate the distance the driver traveled).

To be sure, the Fourth Circuit has said, "In the absence of sufficient additional indicia of reliability, an officer's visual approximation that a vehicle is traveling *in slight excess* of the legal speed limit is a guess that is merely conclusory and which lacks the necessary factual foundation to provide an officer with reasonably trustworthy information to initiate a traffic stop." *United States v. Sowards*, 690 F.3d 583, 591 (4th Cir. 2012) (emphasis added). But even if *Sowards*' grudging view of reasonable suspicion is correct—not an obvious proposition—it would not help Mr. Wilson here. Officer Coney estimated Mr. Wilson's speed at 50 to 55 miles per hour going through a major intersection where the speed limit was 35. His estimate of Mr. Wilson's speed was not a

"guess" that was "merely conclusory"; it was instead the reliable observation of a trained, experienced officer.

An officer who stops a driver for a traffic infraction may detain the driver for the shorter of these periods: first, the time it *actually* takes the officer to issue a citation or otherwise deal with the infraction (including, for example, by issuing a formal warning or admonishing and releasing the driver); or second, the time *reasonably* required to issue a citation or otherwise deal with the infraction. *See Rodriguez v. United States*, 135 S. Ct. 1609, 1616 (2015) (holding that a driver cannot be detained after an officer completes issuance of a citation, even if it reasonably could have taken longer); *United States v. Ramirez*, 476 F.3d 1231, 1236 (11th Cir. 2007) ("[T]he duration of the traffic stop must be limited to the time necessary to effectuate the purpose of the stop.").

Officer Coney met these standards here. When the dog alerted, Officer Coney was still engaged in the ordinary process of issuing a citation, and the stop had not exceeded the time reasonably required for that purpose. Deploying the dog while Officer Coney was dealing with the traffic concerns was not improper. *See, e.g.*, *United States v. Holt*, 777 F.3d 1234, 1256-57 (11th Cir. 2015) ("[D]uring the course of a lawful traffic stop, an officer does not need any level of suspicion of criminal activity either to request a canine unit or to conduct a canine sniff.").

To this point the analysis is clear and not reasonably subject to dispute. As it turns out, though, Officer Coney got the law wrong. Mr. Wilson did not make an illegal turn; under Florida law, one may turn left into the outside lane of a four-lane road. *See* Fla. Stat. § 316.151(1)(b). Officer Coney had no authority to detain Mr. Wilson for the purpose of issuing a citation for an illegal turn.

Officer Coney did, however, have authority to detain Mr. Wilson for the purpose of issuing a speeding citation. And Officer Coney would have done so had he not mistakenly decided to issue the turning citation instead. This factual finding draws support not only from Officer Coney's explicit testimony but also from the following. First, Officer Coney's contemporaneous report confirms his view that Mr. Wilson went through the first intersection at a high rate of speed. Second, Officer Coney changed course, turning right, to follow Mr. Wilson, based on the speeding alone; Officer Coney had decided, quite reasonably, to make a stop. Third, upon learning of Mr. Wilson's criminal history, and with a drug dog coincidentally on the scene ready to be deployed, Officer Coney had every incentive to issue a citation and would have done so—for speeding if not for the turn.

In a different context, one might question whether an officer would actually issue a citation, rather just a formal warning or oral admonishment, to a person seen speeding but not clocked. Here, though, Officer Coney would have issued a

citation.  He so testified.  And even if he would not have issued a speeding citation in the absence of the information he obtained about Mr. Wilson's criminal history—information Officer Coney learned after making the stop—Officer Coney plainly intended to issue a citation upon learning that information.  Issuing a citation allowed Officer Coney to detain Mr. Wilson long enough for the dog to be lawfully deployed.  And Officer Coney was entitled to issue a lawful citation so the dog could be deployed, even if he was motivated by the possibility of discovering drugs or other criminal activity for which he lacked reasonable suspicion or probable cause.  *See, e.g.*, *Whren v. United States*, 517 U.S. 806 (1996) (holding that an officer may stop a car on probable cause to believe a traffic offense has occurred, even though the officer's subjective motivation for the stop is not to enforce the traffic laws but to investigate a possible drug offense).

That Officer Coney issued the wrong citation does not require suppression of the evidence.  The goal of the exclusionary rule is to deter Fourth Amendment violations by preventing the prosecution from deriving a benefit from a violation.  Courts have recognized, though, that the exclusionary rule should not provide a windfall to a defendant.  If evidence was going to be seized lawfully, in full compliance with the Fourth Amendment, the evidence need not be suppressed.  *See, e.g.*, *Nix v. Williams*, 467 U.S. 431, 434 (1984) ("[I]f the government can prove that the evidence would have been obtained inevitably and, therefore, would

have been admitted regardless of any overreaching by the police, there is no rational basis to keep that evidence from the jury in order to ensure the fairness of the trial proceedings."); *United States v. Johnson*, 777 F.3d 1270, 1274 (11th Cir. 2015). This is sometimes called the inevitable-discovery doctrine.

The principle is fully applicable here. Had Officer Coney done everything right, making no mistake and complying fully with the Fourth Amendment, he would have stopped Mr. Wilson just as he did, he would have issued a citation in the same manner and taking the same time as he did, the dog would have been deployed just as he was, and this evidence would have been discovered and seized just as it was. The only difference would have been the content of the citation; it would have charged Mr. Wilson with speeding rather than with making an improper turn.

Under these circumstances, the evidence should not be suppressed.

III

For these reasons,

IT IS ORDERED:

The motion to suppress, ECF No. 15, is denied.

SO ORDERED on October 12, 2015.

s/Robert L. Hinkle<br>United States District Judge